**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

| | |
|---|---|
| **KI SAU CHAN,** | **No. 26-3345** |
| *Plaintiff-Appellant,* | On Appeal from the United States District Court for the District of New Jersey |
| v. | |
| **VALLEY HEALTH SYSTEM INC, et al,** | D.N.J. No. 2:26-cv-03358-MCA-AME |
| *Defendants-Appellees.* | Hon. Madeline Cox Arleo, U.S.D.J. |

**APPELLANT'S MOTION TO EXPEDITE APPEAL**
**PURSUANT TO THIRD CIRCUIT L.A.R. 4.1**

Pursuant to Third Circuit Local Appellate Rule 4.1, Plaintiff-Appellant Ms. Ki Sau Chan, appearing pro se, respectfully moves this Court to expedite the briefing and disposition of this appeal. This appeal was docketed on September 23, 2026, and this motion is timely under L.A.R. 4.1.

## I. NATURE OF THE APPEAL

1. This is an appeal from the August 28, 2026 Letter Order (Dkt. 86; this Court's Document 1-2) denying Appellant's Renewed Emergency Motion for Preliminary Injunction (Dkt. 81).

2. The District Court itself recognized the urgency of the flag entries. Appellant's original motion for preliminary injunction (Dkt. 51) sought preservation and production of the flag entries and a bar on reliance upon them. The District Court's July 6, 2026 Order (Dkt. 56) warned counsel of sanctions for spoliation of the flag entries and related ESI, deferred production of that ESI — including flag and alert entries, behavioral notations, and audit logs — to discovery, and referred

the matter to the Magistrate Judge to "promptly schedule a Rule 16 initial scheduling conference" on production of the requested ESI. No such conference has been scheduled. The August 28 Order (Dkt. 86) then refused a bar on reliance without addressing that unfinished path or the record submitted with Dkt. 81, and the harm that motion sought to prevent continues.

3. The motion (Dkt. 81) sought to enjoin Defendants-Appellees from relying upon or disseminating fabricated psychiatric and behavioral flag entries placed in Appellant’s medical records without her knowledge or consent. Appellant alleges those entries were fabricated and retaliatory, planted by hospital administrators after she made protected patient-safety complaints for which hospital leadership had already issued a written apology and refund. The facts below are set out in Dkt. 81 and its exhibits, the Amended Complaint (Dkt. 5) and its exhibits (Dkt. 4), supplemental exhibits (Dkt. 18), and Appellant's opposition to PRISM's motion to dismiss (Dkt. 32).

4. This appeal concerns the ongoing violation of Appellant’s bodily autonomy, bodily integrity, and right to informed consent. Appellant alleges that unverified psychiatric flag entries caused subsequent medical providers to treat her not as a human being or a patient whose informed consent was required, but as a body that could be restrained and invaded without her knowledge. While she was unconscious, providers administered an antipsychotic and inserted a Foley catheter into her genitals, with no documented clinical indication and no consent. **Appellant has no evaluation, diagnosis, treatment, or even referral for any psychiatric condition in her entire life, particularly not warranting an antipsychotic drug; and since this lawsuit began**

**almost a year ago, Defendants have produced no document to the contrary.** No provider is shown to have verified that Appellant has zero psychiatry history before acting on the flags. That is an injury to her person and dignity, not only to an organ or an eye. The flags remain in shared electronic record systems across the U.S. Each new encounter repeats the same unconsented violation of her body. A later money judgment cannot restore the consent that was never obtained or the dignity that was disregarded.

## II. EXCEPTIONAL REASON FOR EXPEDITION

5. Expedition is warranted because the harm is imminent, continuing, concrete and irreparable. The fabricated psychiatric/behavioral flag entries remain in Appellant's records and, through shared electronic health-record networks, are available to any and all participating medical provider at each new encounter. Preserving the flags does not stop providers from relying on them, or prevent the aberrant care that follows.

6. The pattern has continuously repeated across institutions whose electronic medical records are linked and shared, including non-defendant hospitals, with a consistency that excludes coincidence. Appellant's longtime surgeon's visit note and operative reports describe Appellant as "very pleasant," and new providers also characterize her as "very pleasant" and "a pleasure to meet" in initial visit notes. Once a provider accesses the shared record with the flags, the clinical relationship deteriorates into providers appearing frightened or alarmed, and then dismissive and hostile, Appellant's truthful account is disbelieved, acute conditions requiring urgent care are recharacterized as "chronic," and indicated emergency care is delayed or denied. Absent

expedition, the next unscheduled encounter during ordinary briefing is likely to follow the same course.

7. The completed harms are documented. At Valley, despite a third-party CT finding of a "punctate appendicolith" — a recognized marker of surgical emergency — and an outside gastroenterology referral for surgical evaluation of acute appendicitis, the presentation was downgraded to "chronic," Defendant APN Julie Zavadenko repeatedly canceled emergency imaging giving reason as 'Discharged' while Appellant remained hospitalized in severe pain, and appendectomy was delayed four days. Simultaneously she ordered an unrelated lumbar-spine MRI under the name 'DR. JULIE ZAVADENKO' [sic] — an order Valley Patient Relations repeatedly denied existed on recording, but which Aetna/Evicore preauthorization records confirm. Appellant was also given contraindicated barium sulfate after appendicitis with appendicolith was in view. Appellant's appendix perforated and became gangrenous, with septic complications requiring prolonged IV antibiotics, a substantial risk of death, prolonged hospitalization, and readmission for postoperative complications. During that admission, while Appellant was unconscious, haloperidol (antipsychotic) and a Foley catheter were administered; a night nurse disclosed both afterward, and a surgical resident acknowledged them on recordings. Defendants later called the antipsychotic "anti-nausea" in their court filing, though the anesthesia record documents no nausea, and claimed an appendectomy-only consent form covered both interventions. Those records and the flag entries remain unproduced despite more than a year of HIPAA requests.

8. The same pattern threatens Appellant's vision. She has high myopia (approximately −10.50 to −10.75 diopters) and vitreomacular adhesion in the untreated right eye. Three retinal specialists at two practices unaffiliated with Defendants had previously treated her with warmth and concern, warning of near-term posterior vitreous detachment — which in a highly myopic eye can cause retinal tears, detachment, macular hole, and permanent vision loss — and instructing her to return immediately upon any sudden increase in floaters or flashes. In September 2025, after accessing her chart, those same specialists became dismissive and delayed or withheld indicated evaluation. At PRISM, after office staff accessed the flags, Defendant Dr. Elena Ng withheld medically indicated scleral depression, delaying diagnosis and emergency treatment of retinal tears six days. Dr. Vincent Ho performed the indicated examination and emergency laser surgery on the first visit, before his PRISM-affiliated office accessed her records. Once it did, his previously friendly, professional manner changed: he became dismissive, handled her face roughly, and withheld the same examination. Appellant reported the change to the office manager that day and requested removal of any flags; both the manager and Dr. Ho apologized. Appellant has no treating retinal surgeon, and an acute presentation cannot wait for the ordinary appellate calendar.

9. The pattern extends beyond clinicians. Appellant’s insurer, Aetna, initially denied Appellant’s complaint about her September 15, 2025 PRISM visit based on PRISM’s false representation that Dr. Ng never saw her, although Aetna had paid Dr. Ng for that date of service. After Appellant submitted audio recordings of the visit and Mr. Yau's notarized affidavit to the Board of Medical

Examiners, PRISM reversed itself and admitted Dr. Ng did see her, and Aetna referred PRISM to its Special Investigations Unit.

10. Appellant alleges each episode followed access to and reliance on the undisclosed false flag entries. The completed harms are delayed emergency care and invasive interventions forced on Appellant’s body and private anatomy without her knowledge or consent, and actively omitted from the medical records produced to Appellant. The continuing harm is that any provider who opens her record may again subject her to aberrant medical care and violate her bodily autonomy without verifying the flags or obtaining her informed consent, while Defendants continue to actively conceal both the flags and the records of the nonconsensual interventions. Appellant has never been permitted by Defendants to see the flags, challenge them, or have them removed. This Court cannot later undo these indignities, the egregious violations of Appellant's bodily autonomy, bodily integrity, informed consent rights, or the irreparable medical harm.

11. Valley's own statements confirm the flags exist. Valley's Privacy Officer (November 2025), its Risk Management Director Janet M. Zicarelli, a lawyer and nurse (February 5, 2026), and its defense counsel Veech (February 6, 2026) each acknowledged the flags while arguing they need not be produced because flags were not used in medical care for Appellant and are "not part of your or any other patient's designated record set,” using HIPAA as a shield. On February 25, 2026, Zicarelli completely reversed herself and certified that no flags exist — a reversal defense counsel Kavanagh later confessed in a court filing she directed “to specifically combat plaintiff’s statements.”

12. The question on appeal is narrow: whether the District Court abused its discretion in refusing a preliminary injunction against continued reliance on and dissemination of the flag entries, including whether it applied the correct standard and whether the record showed ongoing irreparable harm. That issue does not require the ordinary briefing calendar. This motion is made without prejudice to Appellant's September 24, 2026 response showing jurisdiction under 28 U.S.C. § 1292(a)(1) (Document 5).

## III. PROPOSED BRIEFING SCHEDULE

13. Appellant proposes:

Appellant's Brief and Appendix: 21 days from the date this motion is granted.

Appellees' Brief: 21 days after service of Appellant's Brief.

Appellant's Reply Brief (if any): 10 days after service of Appellees' Brief.

## IV. STATEMENT REGARDING CONSENT OF OPPOSING PARTIES

14. On September 22, 2026, Appellant emailed counsel of record for each Defendant group, provided this proposed schedule, and asked whether they consent. As of filing, Defendants Valley corporate entities, nurses Elizabeth Sattely, Gizem Akkus, Telisha Calasse, Julie Zavadenko, and Dr. Carl Winkler oppose. The remaining Defendants, including Hospital for Special Surgery/Dr. Andrew Elliott, PRISM/Dr. Elena Ng, Valley ER Dr. Juxhesta Cakrani, and Valley Anesthesiologists Drs. Kyra Bernstein and Owusu-Dapaah, have not responded.

**CONCLUSION**

Appellant respectfully requests that the Court grant this motion and order the schedule proposed above, or such other expedited schedule as the Court deems appropriate.

Respectfully submitted,

/s/ Ki Sau Chan
**Ki Sau Chan**
Plaintiff-Appellant, Pro Se
403 McGuigan Place, Harrison, NJ 07029
(201) 852-5390 | ki.chan@alumni.stanford.edu
Dated: September 25, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on the date below a true and correct copy of the foregoing Motion to Expedite Appeal was served on all counsel of record via the Court's CM/ECF system.

/s/ Ki Sau Chan
**Ki Sau Chan**
Dated: September 25, 2026