**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

KI SAU CHAN,
Plaintiff-Appellant,

v.

VALLEY HEALTH SYSTEM, INC., et al.,
Defendants-Appellees.

No. 26-3345

On Appeal from the United States District Court for the District of New Jersey, No. 2:26-cv-03358-MCA-AME

**APPELLANT'S RESPONSE TO THE COURT'S OCTOBER 15, 2026 ORDER REGARDING POSSIBLE SUMMARY ACTION**

Appellant Ki Sau Chan responds to the Court's October 15, 2026 Order (Document 10). Summary affirmance is not warranted. This appeal presents substantial questions, and the record already shows legal error in the order under review, the District Court's August 28, 2026 Letter Order (Dkt. 86; this Court's Document 1-2; Document 8, Exhibit A). The appeal warrants full, expedited briefing. In the meantime, Appellant asks the Court to grant the injunction pending appeal requested in her Emergency Motion (Document 8).

Appellant has no diagnosis of any psychiatric condition, and no psychiatric evaluation, treatment, or even a psychiatric referral, in her entire life. There is no diagnosis of any psychiatric condition that would warrant an antipsychotic drug. Moreover, to date, Defendants have produced NO document whatsoever to the contrary since litigation began almost a year ago.

Dkt. 86 held that Appellant had not shown a reasonable probability of success on a claim that would provide the requested relief. This is a civil-rights case, not a medical-negligence case, and no Affidavit of Merit is needed. *See Berk v. Choy*, 607 U.S. ___ (2026). The Amended Complaint asserts claims under Title III of the ADA, 42 U.S.C. §§ 12102(1)(C), 12182, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, based on Defendants' placement and use of psychiatric and behavioral flags. Defendants placed false psychiatric and behavioral flags in Appellant's records after her protected patient-safety complaints. They then treated her as a person with a mental impairment. Acting on those flags, Defendants used the pretext of "anti-nausea" treatment to put haloperidol, an antipsychotic, into Appellant's body without her knowledge or consent, inserted a Foley catheter into her genitals while she was unconscious, and actively concealed both. Dkt. 5 ¶¶ 85–91, 104. These are intentional violations of bodily integrity and civil rights. Whether those claims can support the relief sought is a substantial question.

## I. THIS COURT HAS JURISDICTION.

The Clerk's September 24, 2026 letter cited only 28 U.S.C. § 1291. Section 1292(a)(1) independently grants jurisdiction over interlocutory orders "refusing" injunctions. Dkt. 86 denied a noticed Rule 65(a) motion for a preliminary injunction (Dkt. 81). It is an order refusing an injunction on its face. Appellant

addressed jurisdiction in Document 5 and her supplemental response. No Appellee has responded.

## II. THE APPEAL PRESENTS SUBSTANTIAL QUESTIONS.

### A. The District Court applied the wrong legal standard.

Dkt. 81 was a noticed Rule 65(a) motion, returnable September 21, 2026 and served on all Defendants. Dkt. 86 measured it against Fed. R. Civ. P. 65(b)(1)(A), the standard for temporary restraining orders issued without notice. Dkt. 86 at 2. Whether the court applied the correct legal standard is a question of law reviewed de novo. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). An error of law in the governing standard is, by itself, a substantial question.

### B. The District Court called "hypothetical and speculative" a harm that has already occurred.

Dkt. 86 held:

> "Plaintiff has failed to demonstrate reasonable probability of success on a claim that would provide such relief; or how the denial of such relief would cause irreparable harm, since such allegations are hypothetical and speculative. See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citations and quotations omitted) (stating '[e]stablishing a risk of irreparable harm is not enough' and emphasizing the 'requisite feared injury or harm must be irreparable—not merely serious or substantial'). Subjective fear or anxiety regarding future medical encounters does not constitute objective, imminent, and non-speculative legal injury under the federal rules. See Fed. R. Civ. P. 65(b)(1)(A) (requiring 'immediate and irreparable injury, loss, or damage')."

Dkt. 86 at 2. *ECRI* concerned a feared commercial injury that had not happened. Here the harm has already happened, and the record documents it.

During Appellant's August 2025 Valley admission, she was given haloperidol, an antipsychotic, and a Foley catheter was inserted into her genitals while she was unconscious, without her consent. Both were disclosed to her only afterward, by a night nurse and a surgical resident, on recordings. Document 8, Exs. AE, AF. A "rescue" agent presupposes nausea to rescue. The record documents none: no nausea assessment precedes the 18:40 dose, and Dr. Owusu-Dapaah's own entry two minutes later records "Nausea/Vomiting: No." Dkt. 81, Exs. 11, 13. Dr. Owusu-Dapaah told the State Board of Medical Examiners: "Our goal was never to harm Ms. Chan or give her this medication without her consent." Document 8, Ex. E (Dkt. 81, Ex. 3).

The same record shows Valley recharacterizing Appellant's acute condition as "chronic" and withholding emergency care. An outside CT found a "punctate appendicolith," and an outside gastroenterologist referred her for surgical evaluation of acute appendicitis. Document 8, Exs. AG, AH. On the afternoon of August 9, 2025, Defendant emergency physician Dr. Juxhesta Cakrani planned emergency imaging: an ultrasound and, if inconclusive, an MRI of the pelvis. Document 8, Ex. AI. That evening she reversed course and told Appellant, on a

recording, that on-call surgeon Defendant Dr. Carl Winkler did not think it was acute:

> Dr. Cakrani: "So, this symptoms have been ongoing for three weeks. He doesn't think it's acute appendicitis. He thinks like, yes, it's appendicitis, but it's probably ongoing for the last three weeks, especially if your symptoms have been consistent."
>
> Ki: "Okay. But how do you treat ongoing?"
>
> Dr. Cakrani: "Chronic appendicitis is usually antibiotics, is what he told me over the phone."

Document 8, Ex. AJ. No Valley record charts "chronic" appendicitis. Defendant APN Julie Zavadenko canceled emergency abdominal imaging with the stop reason "Discharged" while Appellant remained admitted. Document 8, Ex. O. Valley's own MRI found a "5.2 cm collection/abscess" that "may reflect perforated appendicitis." Document 8, Ex. H. Appellant's appendectomy was delayed four days, and her appendix perforated.

These are completed injuries, not "[s]ubjective fear or anxiety." The interest in avoiding unwanted antipsychotic medication is significant. *Cf. Washington v. Harper*, 494 U.S. 210, 221–22 (1990). Each new encounter with a provider who accesses the flags repeats the unconsented use, as happened again at University Hospital on October 2, 2026. Document 8 at 21–22.

**C. The District Court decided an issue it had deferred to a Rule 16 process that has never begun.**

On July 6, 2026, the District Court held: "Plaintiff's request for the immediate disclosure, production, and restriction on the use of these entries involves matters properly categorized as pre-judgment discovery. Accordingly, the request for production is DEFERRED to the discovery process; and it is further" (capitalization in original). It then ordered: "that, to ensure these critical discovery issues are addressed with the utmost efficiency and speed, this matter is hereby referred to the assigned Magistrate Judge, who shall promptly schedule a Rule 16 initial scheduling conference so that the parties may use that conference to discuss the scope, protocol, and targeted timeline for the production of the requested ESI, audit trails, and associated metadata; and it is further". Dkt. 56 at 2 (Document 8, Ex. C). The same order warned counsel "that a failure to meet these ethical duties may result in sanctions." *Id.* No Rule 16 conference has been held, and no scheduling order has issued. Appellant's written request to the Magistrate Judge for that conference has gone unanswered. Dkt. 86 then denied the same restriction under the preliminary-injunction standard, twenty-four days before the motion day, before any opposition and before Appellant's reply was due. No Defendant opposed Dkt. 81. Having found the flags serious enough to warn counsel of

spoliation sanctions, the court could not consistently call harm from their use hypothetical.

**D. The District Court did not address the record.**

Dkt. 86 does not discuss any exhibit to Dkt. 81. For about six months, every Valley representative who addressed the flags acknowledged they exist while arguing that HIPAA did not require Valley to produce them. Valley's Privacy Officer wrote on November 12, 2025: "As noted previously in response to your additional request for 'flag or alert entries' and 'audit/access logs,' any such tools or logs are not part of your or any other patient's designated record set. As defined by HIPAA, these entries and logs are not 'records' used, whether in whole or in part, to make decisions about individuals." Document 8, Ex. R (Dkt. 4 at 6). Valley's Risk Management Director, Janet M. Zicarelli, certified on February 5, 2026 that "any potential flags were not used by any medical/administrative staff in rendering care and treatment to the patient." Document 8, Ex. P (Dkt. 5 at 40–41). On February 25, 2026, she reversed herself: "There are no 'flags' or 'alerts' in plaintiffs electronic medical record." Document 8, Ex. Q (Dkt. 5 at 63). Valley's counsel, Eileen M. Kavanagh, then wrote: "Because plaintiff repeatedly stated in her prior papers that Valley inferred that flags or alerts existed, I asked Janet Zicarelli to draft a supplemental Certification to specifically combat plaintiff's

statements and put this matter to rest, which it did." Document 8, Ex. S (Dkt. 4 at 3).

Dkt. 86 also did not address the loss of the state court's February 26, 2026 preliminary injunction, which barred Defendants from relying on or disseminating the flags. Document 8, Ex. B. The state court administratively dismissed that case on June 23, 2026, without docketing Appellant's filings and without notice, 56 days before the dismissal date stated in its own written notice. Document 8 at 12. Dkt. 86 also refers to Appellant, a woman, as "his": "Plaintiff also seek a preliminary order barring Defendants from disseminating any "red flag" issues, and other documents related to his healthcare." Dkt. 86 at 2. A ruling that does not engage the record cannot be summarily affirmed on that record.

## III. NO APPELLEE HAS APPEARED OR OPPOSED.

No Appellee has filed an appearance, a response to the jurisdictional letter, or an opposition to Appellant's motion to expedite (Document 6) or her Emergency Motion (Document 8). The Clerk's October 14, 2026 letter (Document 9) directed counsel to file appearance forms and disclosure statements within 14 days. No Appellee has asked this Court to affirm.

## IV. RELIEF REQUESTED

Appellant respectfully requests that the Court: (1) decline to summarily affirm Dkt. 86; (2) hold that it has jurisdiction under 28 U.S.C. § 1292(a)(1); (3)

set an expedited briefing schedule on the appeal; (4) grant the injunction pending appeal requested in Document 8; and (5) in the alternative, if the Court concludes that summary action is appropriate, not affirm Dkt. 86 but vacate and remand with instructions to decide Dkt. 81 under the Rule 65(a) preliminary-injunction standard on the full record, and to hold the Rule 16 conference ordered in Dkt. 56.

Dated: October 15, 2026
Respectfully submitted,
/s/ Ki Sau Chan
Ki Sau Chan
Plaintiff-Appellant
403 McGuigan Place, Harrison, New Jersey 07029
(201) 852-5390 | ki.chan@alumni.stanford.edu

## CERTIFICATE OF COMPLIANCE

This response complies with Fed. R. App. P. 27(d)(2)(A) because it contains 1,763 words, excluding the parts exempted by Fed. R. App. P. 32(f). It complies with Fed. R. App. P. 32(a)(5)–(6) because it was prepared in 14-point Times New Roman, a proportionally spaced typeface.

/s/ Ki Sau Chan

## CERTIFICATE OF SERVICE

I certify that on October 15, 2026, I filed this response through the Court's CM/ECF system, which will serve all counsel of record: Eileen M. Kavanagh, Esq.; Robert G. Veech, III, Esq.; Charles C. Koernig, Esq.; Eric S. Latzer, Esq.; Gary W. Patterson, Esq.; Samuel A. Youssof, Esq.; and Ryan T. Gannon, Esq.

/s/ Ki Sau Chan